# LANSNER & KUBITSCHEK

ATTORNEYS AT LAW
325 BROADWAY - SUITE 203
NEW YORK, NEW YORK 10007
www.lansnerkubitschek.com
(212) 349-0900
FAX (212) 349-0694

CAROLYN A. KUBITSCHEK
DAVID J. LANSNER

September 24, 2015

Hon. Vera M. Scanlon
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Jewels v. Casner, 12-CV-1895 (KAM) (VMS)

Dear Magistrate Judge Scanlon:

      This letter is in response to the letter of Courtney Chadwell, dated September 18, 2015. (Doc. 96) In their letter, City defendants seek a protective order completely barring plaintiff from taking any 30(b)(6) depositions of the City. Obviously, plaintiff opposes their request.

      The City's claim that plaintiff has the burden on this issue (Chadwell letter, p. 1) is contrary to the law of this Circuit. It is the party who seeks a protective order under FRCP 26(c) that has the burden of showing that "good cause" exists for the issuance of such an order. Gambale v. Deutsche Bank AG, 377 F.3d 133, 142 (2d Cir. 2004). As shown below, the City has failed to sustain its burden.

      The 30(b)(6) notice seeks three categories of information – 1) the City's policies and procedures concerning protecting its foster children during the time that plaintiff was in foster care; 2) training that the City provided to its employees and to employees of the foster care agencies regarding protecting the safety of foster children; and 3) the City's knowledge of and response to government reports about defects in the City's foster care system, defects that jeopardized the safety of the City's foster children during the time that plaintiff was in foster care

      During the phone conference which preceded the City's letter, the City had agreed to produce 30(b)(6) witnesses on the issue of ACS policies regarding foster children. The City now declines to do so. City no authority, the City complains about the number of requests (15). However, in other cases courts have approved 30(b)(6) notices containing substantially more requests. See, e.g., Dongguk University v. Yale University, 270 F.R.D. 70 (D.Ct. 2010) (30 requests). The number of requests alone is not dispositive, and the City errs in failing to identify both the precise requests which it finds objectionable and the reasons therefor.

To: Hon. Vera M. Scanlon                                                                September 24, 2015
Re: Jewels v. Casner, 12-CV-1895 (KAM) (VMS)                                                     Page 2

**City's Policies and Procedures Regarding Foster Children (Doc. 91-1 ¶¶1, 3-5, 6-10)**

Because a municipality may not be held liable under 42 U.S.C. §1983 based upon *respondeat superior*, the plaintiff must show that the municipality's policies, practices, or training was unconstitutional in order to establish the municipality's liability. *See*, Monell v. Department of Social Services, 436 U.S. 658 (1978). Therefore, plaintiff needs to depose City employees about those policies, practices, and training, and the City's knowledge of the dangers to foster children.

A municipality will be held liable for the abuse if "its top supervisory personnel, exhibited deliberate indifference to a known injury, a known risk, or a specific duty. . . ." Doe v. New York City Department of Social Services, 649 F.2d 134, 145 (2d Cir. 1981). In the instant case, the "known risk" is the risk that foster children are at risk of being abused. In the instant case, the risk that foster children would be abused was well-known. Not only had the decision in Doe, *supra*, brought the problem of abuse in foster care to public attention, but the Comptroller of the State of New York, in a comprehensive audit (issued in 1994, with a follow-up in 1996), found that New York City foster children were not receiving all necessary services, including protection from abuse. Plaintiffs are entitled to know how New York City responded to that audit. (*See* Doc. 96-1 ¶¶6-10) Likewise, the United States Department of Health and Human Services reported that the rate of foster care abuse in the State of New York was double the national average, making New York State's foster care system one of the most dangerous in the country. Since New York City children comprise 60% of the State's foster care population, the United States' indictment of New York State's foster care system applied to New York City as well. New York City's response to those findings (¶¶3-5) is directly relevant to the issue of its deliberate indifference to the know risk of child abuse in foster care.

Moreover, the children's governmental custodians (here, the City of New York) have an affirmative obligation to protect the children in its care. Plaintiff is entitled to know how the City claims it carried out that obligation.

Plaintiffs have requested documents embodying the City's policies on protecting foster children from abuse. That topic includes the investigation of prospective foster parents and their families (to ensure that child abusers are not licensed as foster parents), the supervision of foster parents and their foster children, and various other aspects of the foster care program. (*See*, Doc. 96-1, ¶1.) The City has produced some documents. Plaintiff has produced other relevant City documents to all defendants. Plaintiffs are entitled to inquire as to the actual practices of the City, as well as the stated policies, and to inquire as to how those written policies have actually been implemented.

City defendants object to the demand on the ground that they may have to produce more than one witness. (P. 2) However, it is unlikely that the City will have to produce as many witnesses as it claims. The vast majority of the policy and practices in Item One of the Notice

To: Hon. Vera M. Scanlon September 24, 2015
Re: Jewels v. Casner, 12-CV-1895 (KAM) (VMS) Page 3

relate to the selection of foster parents, the supervision of foster parents and foster children, investigations of allegations of maltreatment in foster care, and record-keeping of such matters. One would expect that there is a supervisory official who is responsible for and aware of these subjects. Items Two and Fifteen request information about how the City trained its employees and agents to carry out these duties. One would expect that the official responsible for ensuring that these policies and practices are carried out was also familiar with how her employees were being trained to do so. If that is not the same person, that fact alone is important for plaintiff to know.

Items Three through Twelve all relate to the City's response to the various reports that criticized its performance. Again, one would expect that the same official was responsible for such responses. If not, that fact again is important for plaintiff to know.

Items Thirteen and Fourteen relate to whether or not the individual defendants followed or failed to follow the City's policies. One would expect that the City or its attorneys have already investigated and determined this issue.

Even if the City must produce several witnesses, that is no basis for a protective order. The federal rules explicitly give the organization discretion to designate "one or more persons . . . to testify on its behalf." FRCP 30(b)(6). Thus, the corporation has the authority and the burden to "identify responsive witnesses for a corporation. . . ." Resolution Trust Corp. v. S. Union Co., 985 F.2d 196, 197 (5th Cir. 1993). It is not the business of the adversary or the court to determine which or how many witnesses the corporation will produce. "Often, the corporate designee lacks sufficient knowledge of the relevant facts to provide adequate responses to the discovering party's requests. In such a situation, the onus falls on the corporation to present an additional designee. . . ." Barron v. Caterpillar, Inc., 168 F.R.D. 175, 176-77 (E.D.Pa. 1996).

**Training (Doc. 96-1 ¶2)**

A municipality's "decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 563 U.S. 51 (2011). In the instant case, all of the City employees who were responsible for foster children had an affirmative obligation to protect the children from abuse, not merely the three individually-named defendants. That includes caseworkers and supervisors in the OCACM department who supervised plaintiff's case prior or subsequent to the three individually-named defendants; caseworkers and supervisors in the ACS Office of Confidential Investigations ("OCI" or "OSI") who investigated multiple allegations that plaintiff had been abused while in foster care; and others. Indeed, at his deposition, City defendant Mark Casner stated that all ACS employees had a responsibility to protect foster children.

City defendants stated that the City did not provide any training to foster care agency employees (¶15). Plaintiff has agreed to accept a signed written statement in lieu of deposing a

To: Hon. Vera M. Scanlon                                                                        September 24, 2015
Re: Jewels v. Casner, 12-CV-1895 (KAM) (VMS)                                                    Page 4

30(b)(6) witness on that issue.  Plaintiff has also agreed to withdraw his request for testimony on training provided to ECS and DLS staff (¶2).

**Time frame for City Evaluations (Doc. 96-1 ¶¶11-12)**

      The City objects to the lack of a time frame for evaluations of defendants Concord and HeartShare.  Defendant Concord provided foster care to New York City children from 1992 until 2008.  Plaintiff was in foster care with Concord for almost all of that time, 1997-2008.  As early as 1996, the City Department of Investigations issued a report concluding that Concord should be shut down.  The City did not close Concord; instead, it placed more foster children there, including plaintiff.  Plaintiff is entitled to inquire further on the issue.

      Plaintiff believes that HeartShare Human Services provided foster care to New York City children from approximately 1990 until 2015.  (Before 1990, the agency operated under a different name and structure.)  Plaintiff was in foster care with HeartShare from 1998 until 2012 or 2013. Thus, the City's evaluations of HeartShare during the entire time period are relevant to plaintiff's claims.

      Plaintiff respectfully requests that this Court deny the City's motion for a protective order, and mandate that the 30(b)(6) deposition proceed.  Thank you for your consideration.

                                                      Very truly yours,

                                                      S/ Carolyn A. Kubitschek

                                                      Carolyn A. Kubitschek

CAK/mt