```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
 CYRIS JEWELS,

                Plaintiff,
                                                    ORDER
        - against -
                                                    12-cv-1895 (KAM)(VMS)
 MARK CASNER, et al.

                Defendants.
----------------------------------------X
```

**MATSUMOTO, United States District Judge:**

On April 17, 2012, plaintiff Cyris Jewels ("plaintiff") filed a complaint against various defendants — including Concord Family Services, Inc. ("Concord"), HeartShare Human Services of New York ("HeartShare"), and the City of New York (the "City") — alleging claims under 42 U.S.C. § 1983 and New York state law. (ECF No. 1, Complaint ("Compl.").) Plaintiff alleged that the defendants had failed to protect him from abuse while he was in the custody of New York City's foster care system. During discovery, plaintiff served notices of deposition pursuant to Fed. R. Civ. P. 30(b)(6). The City filed a motion for a protective order to limit the scope of the depositions, which the magistrate judge substantially denied. The City has objected to that ruling.

## BACKGROUND

Discovery in this case has proceeded for over three years, but is scheduled to come to a close on April 22, 2016. (ECF No. 100.) The current dispute concerns plaintiff's notice of deposition pursuant to Fed. R. Civ. P. 30(b)(6), which "permits a party to depose an organization, including a governmental agency, by examining persons designated by the organization to testify on its behalf 'about information known or reasonably available to the organization.'" *Hartman v. Holder*, No. 00-CV-6107, 2009 WL 792185, at *2 n.4 (E.D.N.Y. Mar. 23, 2009) (quoting Fed. R. Civ. P. 30(b)(6)). After plaintiff served the Rule 30(b)(6) notice, (ECF No. 96, Ex. 1, Notice to Take Deposition Pursuant to F.R.C.P. 30(b)(6) ("Rule 30(b)(6) Notice")), the City moved for a protective order due to the scope of the proposed depositions. (ECF No. 96.)

The plaintiff's Rule 30(b)(6) Notice is indeed broad. In the 16-page notice, plaintiff seeks a City employee (or employees) who can testify about all policies, procedures, and standards of the New York City Administration for Children's Services ("ACS") and any of its various divisions between May 1997 and April 2012 on 51 delineated issues. (Rule 30(b)(6) Notice ¶ 1.) Similarly, the request concerns information regarding training programs provided to ACS and its component divisions during the tenure of three specific named defendants, each allegedly an employee or supervisor at ACS who supervised or monitored plaintiff during his time in the

2

City's custody. (*Id.* ¶ 2.) The request also relates to the City's responses to particular federal and state reports about deficiencies in the foster care system in New York State and New York City. (*Id.* ¶¶ 3-10.) Finally, plaintiff seeks a witness who can discuss evaluations of Concord and HeartShare — both nonprofit foster care providers that had City contracts — as well as training programs provided to voluntary foster care agencies from January 1996 through April 2012. (*Id.* ¶¶ 11-12, 15.)1

After a lengthy and meticulous in-person hearing in which Magistrate Judge Scanlon addressed each request in plaintiff's Rule 30(b)(6) Notice, she overruled most of the city's objections. (ECF No. 100; ECF No. 101, Transcript ("Tr.").) The City subsequently moved to set aside Magistrate Judge Scanlon's order. (ECF No. 103, Objections to Magistrate's Order ("City Mot.").) Plaintiff filed a response (ECF No. 104, Plaintiff's Response to Defendant City's Objections to the Order of the Magistrate Judge ("Pl. Resp.")), to which the City replied. (ECF No. 105, Defendant's Reply to Plaintiff's Response to Objections to Magistrate's Order ("City Reply").)

---

1 Plaintiff initially sought a witness who could testify about actions taken by City employees that were either consistent or inconsistent with ACS policy. (Rule 30(b)(6) Notice ¶¶ 13-14.) The magistrate judge, however, stated that a Rule 30(b)(6) deposition was not an appropriate mechanism to obtain that information. (Tr. 37-39.)

3

**DISCUSSION**

*I. Legal Standard*

The court reviews a magistrate judge's decisions concerning nondispositive pretrial matters like this one under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("Matters concerning discovery generally are considered nondispositive of the litigation." (internal quotation marks and citation omitted)).

An order is "clearly erroneous" only when the reviewing court, in evaluating all of the evidence, "is left with the definite and firm conviction that a mistake has been committed." *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 139 (E.D.N.Y. 2013) (internal quotation marks and citation omitted). An order is "contrary to law" when it "'fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *E.E.O.C. v. First Wireless Grp., Inc.*, 225 F.R.D. 404, 405 (E.D.N.Y. 2004) (quoting *Weiss v. La Suisse*, 161 F. Supp. 2d 305, 320–21 (S.D.N.Y. 2001)). To simplify, then, "it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge." 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3069 (2d ed. 2015).

---

Plaintiff has not sought review of that determination.

The underlying issue, however, is whether the Rule 30(b)(6) Notice complied with Fed. R. Civ. P. 26(b)(1), which permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Whether the information sought is relevant depends on the nature of the claim. In this case, plaintiff has sought to hold the City accountable via municipal liability under § 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), for failing to protect him from abuse he suffered as a child in the New York City foster care system. (Pl. Resp. at 1.) "*Monell* liability requires the existence of a custom or policy instructing officials to act in an unconstitutional manner." *Schwimmer v. Kaladjian*, 164 F.3d 619, 1998 WL 708818, at *3 (2d Cir. 1998) (unpublished); *see also Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

The party seeking a "protective order for discovery has the burden of showing good cause for issuance of the order." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997) (citation omitted); *see also* Fed. R. Civ. P. 26(c) ("The court may, *for good cause*, issue an order to protect a party or

person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." (emphasis added)).

*II. Arguments*

The City asserts "relevancy objections as to each and every topic contained within the notice." (City Mot. at 5.) Principally, the City takes issue with the lack of temporal limits on certain information; the request for information regarding contract foster care agencies that did not serve plaintiff; and the request's focus on federal and state reports that do not specifically mention plaintiff, Concord, HeartShare, the 17 named defendants, or any of plaintiff's foster homes. (*Id.* at 5-6.) The City also objects that many of the departments from which information is sought are not implicated in this action. (*Id.*)

Plaintiff responds that this information is relevant to his claims because it relates to warnings the City received about problems in the foster care system. (Pl. Resp. at 3-4.) The temporal scope, plaintiff contends, is appropriate because of investigations into HeartShare and Concord that commenced before plaintiff was placed with those contractors. (*Id.* at 4-5.) Plaintiff also contends that various City departments — not just ACS — were responsible directly or indirectly for his care. (*Id.* at 5.)

*III. Analysis*

The court concludes that the discovery sought is relevant

to plaintiff's claims and reasonable in light of the nature of the case. First, as the magistrate judge recognized, limiting plaintiff's questioning to the years in which a particular foster agency cared for him risks excluding investigations and reports that predated his arrival, but are relevant to the City's awareness of possible deficiencies in the foster care system. The City is correct that "[t]hese items specify no time limitation" (City Mot. at 5), but that argument disregards the magistrate judge's reasonable limitation of questioning to specific windows of time (1994-2008 for Concord and 2005-2012 for HeartShare). (ECF No. 100, p. 3.)

Further, it would be inappropriate to limit plaintiff to discovery concerning only the two particular nonprofit contractors in this litigation. Establishing liability in this case would require a showing of a policy or custom, *see Monell*, 436 U.S. at 694; consequently, information about the City's interactions with other contract agencies will be, at the very least, relevant to plaintiff's municipal liability claim. As the magistrate judge succinctly explained:

> Certainly it's reasonable to ask what happened to the other 30-something agencies that were contract foster care agencies. Do you need to drill down on every single one of them, I can't tell right now whether that is or isn't something that would need to be done. I don't know if this whole system is rife with problems, if HeartShare and the other entities are different, I don't know. But that would be the point of doing the discovery, to figure out what happened here.

7

(Tr. 20.)

Addressing the City's objection about the Rule 30(b)(6) witness or witnesses who will have to speak about the various federal and state reports that do not specifically mention many of the defendants in this litigation, the court again finds the magistrate judge's reasoning instructive and appropriate:

> [A]ny report that was substantively on point and available to the decision makers at ACS that would have put them on notice that there were problems and better practices and that their system was so bad that they weren't meeting the minimum standards of care for these children, yeah, it would be relevant, whether it comes from the federal government, the state or some city agency.

(Tr. 34.) The court agrees with Judge Scanlon's analysis. The reports at issue speak generally to deficiencies in the City's foster care system and are relevant to plaintiff's claims. To the extent the City claims prejudice by having to respond to problems in other jurisdictions identified in the reports (City Mot. at 6; City Reply at 3), the magistrate judge already determined that the City's witness need not be prepared to answer questions on those topics. (Tr. 29, 31.) Unspooling findings in the federal reports that took into account the performance of foster care systems throughout New York State might be challenging, but the court is confident that the plaintiffs will not require the City to answer for specific problems identified in other jurisdictions.

Finally, the court agrees with the magistrate judge's decision to permit questioning about various ACS subdivisions not

8

directly involved in this litigation. ACS is a large organization containing a wide range of divisions, many of which likely have overlapping authority over and interact within the foster care system. *See About ACS: ACS Divisions and Executive Team*, NYC Administration for Children's Services, http://www.nyc.gov/html/acs/html/about/divisions.shtml (last visited Nov. 19, 2015). Plaintiff alleges that various departments of the City were directly involved with safeguarding his well-being, including the Office of Contract Agency Case Management and the Office of Confidential Investigations.2 (Pl. Resp. at 6.) By the same token, it is reasonable for plaintiff to obtain information about evaluations of Concord and HeartShare by City agencies beyond ACS. The City, which created a large and complex bureaucracy to handle the foster care system, should not be heard to complain that the same bureaucracy is too complex for it to locate a witness who can testify about evaluations of two specific foster care contractors.

## CONCLUSION

The court acknowledges that *Monell* claims can often involve onerous discovery demands. *See Carr v. City of N. Chicago*, 908 F. Supp. 2d 926, 933 (N.D. Ill. 2012) (recognizing that *Monell* discovery "can add significant time, effort, and

---

2 Plaintiff has withdrawn his request for deposition testimony about two ACS subdivisions, the Emergency Children's Services and the Division of Legal Services. (Pl. Resp. at 2.)

complications to the discovery process" (internal quotation marks and citation omitted)). But the information covered in the Rule 30(b)(6) Notice at issue here — considering also the magistrate judge's limitations — is relevant to the plaintiff's claims. The magistrate judge's findings were therefore neither clearly erroneous nor contrary to law. *See* § 636(b)(1)(A). For this reason, the City's objections to the magistrate judge's ruling on its motion for a protective order are respectfully denied.

**SO ORDERED.**

Dated:   November 19, 2015
         Brooklyn, New York

                                        _____/s/____
                                        Kiyo A. Matsumoto
                                        United States District Judge