UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

CYRIS JEWELS,

                 Plaintiff,

                                   **<u>MEMORANDUM & ORDER</u>**

    -against-                     12-CV-01895 (KAM)(ST)


MARK CASNER, et al.,

                 Defendants.

---------------------------------------X


DIAMOND JEWELS,

                 Plaintiff,        15-CV-5760 (KAM)(ST)


     -against-


ADOLFO LEWIS, et al.

                 Defendants.

---------------------------------------X

KIYO A. MATSUMOTO, United States District Judge:

        Plaintiffs Cyris Jewels and Diamond Jewels and the law firm of Lansner & Kubitschek ("LK"), counsel for plaintiffs, move this Court for an Order determining the allocation of attorneys' fees and costs between LK and Reibman & Weiner, a firm that formerly served as co-counsel for plaintiffs.  The fee dispute between plaintiffs' counsel arises from the settlement of litigation in the related cases, *Cyris Jewels v. Casner et*

*al.*, No. 12-cv-1895, and *Diamond Jewels v. Lewis et al.*, No. 15-cv-5760.[1]  (*See* ECF No. 317, Plaintiffs' and LK's Notice of Motion to Determine Attorney Fees and Costs.)[2]  The plaintiffs and their counsel agree that plaintiff Cyris Jewels will receive one third of the total settlement, plaintiff Diamond Jewels will receive one third of the total settlement, and plaintiffs' counsel will receive one third of the total settlement, to be apportioned between plaintiffs' counsel.  Plaintiffs and LK seek an Order: that plaintiffs' former co-counsel, Reibman & Weiner, Marc Reibman, and Steven M. Weiner (collectively "RW") are not entitled to any fees beyond the fees that they have already received from the 2017 partial settlement of the two above-titled cases; that as to the one third settlement share for plaintiffs' attorneys, LK receive 45% of the one third of the settlement allocated to attorneys' fees; and that the remaining 55% share of the one third of the settlement allocated to fees that RW would have received pursuant to a fee sharing agreement between LK and RW, be divided into three equal parts, with one part being allocated to plaintiff Cyris Jewels, one part being

---

[1]     This case was previously consolidated with *Diamond Jewels v. Lewis et al.*, No. 15-cv-5760, for trial.  The parties resolved the dispute via settlement and the sole issue that remains is the presently disputed allocation of attorneys' fees and costs between plaintiffs' counsel.

[2]     The record citations used in this Memorandum and Order refer to the electronic docket in *Cyris Jewels v. Casner, et al.*, No. 12-cv-1895, unless otherwise stated.

allocated to plaintiff Diamond Jewels, and one part being allocated to LK.  (*See id.*)

In support of their motion, plaintiffs and LK have submitted a memorandum of law (ECF No. 318, "LK Mem."), a declaration by plaintiff Cyris Jewels (ECF No. 319, "Cyris Jewels Decl."), a declaration by plaintiff Diamond Jewels (ECF No. 320, "Diamond Jewels Decl."), and a declaration by Carolyn Kubitschek, Esq., counsel for plaintiffs (ECF No. 321, "Kubitschek Decl."), together with accompanying exhibits.  (ECF Nos. 321-1 through 321-27.)  Plaintiffs and LK have also submitted a reply memorandum (ECF No. 322, "LK Reply"), and a reply declaration from Carolyn Kubitschek, Esq. (ECF No. 323, "Kubitschek Reply Decl."), together with accompanying exhibits. (ECF Nos. 323-1 through 323-8.)

RW opposes plaintiffs' and LK's request for relief and moves for this Court for an Order enforcing the fee sharing agreement between LK and RW dividing the contingency fee between the law firms -- 45% to LK and 55% to RW -- and reimbursing RW for its costs.  (*See* ECF No. 326, RW's Notice of Motion to Determine Legal Fees or Alternatively Deny Jurisdiction.)  In the alternative, RW moves for this Court to refer this dispute to Magistrate Judge Steven Tiscione for further proceedings or to dismiss this matter for lack of federal jurisdiction.  (*Id.*) In support of the motion, RW submitted a memorandum of law (ECF

No. 324-3, "RW Mem."), a declaration by Steven M. Weiner, Esq. (ECF No. 324-2, "Weiner Decl."), and a declaration by Marc Reibman, Esq., (ECF No. 321, "Reibman Decl."). RW also submitted a reply memorandum (ECF No. 321-5, "RW Reply"), and a reply declaration from Steven M. Weiner, Esq. (ECF No. 321-4, "Weiner Reply Decl."), together with accompanying exhibits. (ECF Nos. 325-1 through 325-57.)

Having reviewed the parties' moving papers and supporting submissions, the Court declines to refer this matter to Judge Tiscione and also concludes that it retains jurisdiction to resolve this fee dispute between LK and RW. For the reasons set forth below, the Court grants in part and denies in part the parties' respective motions for attorneys' fees and costs, and concludes that RW is entitled to 45% of the one third of the settlement reserved for legal fees and $2,994.74 in costs, and LK is entitled to the remaining 55% share of legal fees and $13,065.35 in costs.

## BACKGROUND

The general background of this litigation is described in this Court's prior decisions in the related cases. *See Diamond Jewels v. Lewis*, No. 15-cv-5760 (KAM)(ST), 2019 WL 5896224 (E.D.N.Y. Nov. 12, 2019); *Cyris Jewels v. Casner*, No. 12-cv-1895 (KAM)(SLT), 2016 WL 2962203 (E.D.N.Y. May 20, 2016); *Cyris Jewels v. Casner*, No. 12-cv-1895 (KAM)(VMS), 2015 WL

4

7306454 (E.D.N.Y. Nov. 19, 2015).  The facts summarized below describe only the background -- including RW's involvement in and withdrawal from the litigation -- as relevant to decide the parties' dispute regarding the attorney fees' and costs.

## I.  Procedural History

The instant motions stem from actions under 42 U.S.C. § 1983 action in which plaintiffs Cyris Jewels and Diamond Jewels alleged that their constitutional rights were violated when numerous defendants failed to protect them from abuse and neglect while they were in the custody of New York City's foster care system.  On April 17, 2012, Cyris Jewels commenced the No. 12-cv-1895 action by filing a complaint against various defendants -- including Concord Family Services, Inc. ("Concord"), HeartShare Human Services of New York ("Heartshare"), and the City of New York (the "City") -- alleging claims under 42 U.S.C. § 1983 and New York state law. (ECF No. 1.)  Discovery proceeded for many years and closed on January 8, 2018 after numerous extensions.  (ECF Nos. 152, 164, 283.)

On December 21, 2016, LK and RW notified the Court that both plaintiffs settled their claims against Concord and its employees, and their claims against the City for injuries which occurred prior to December 15, 2008, the date upon which the City of New York transferred the care of both plaintiffs

from foster care agency Concord to foster care agency HeartShare.  (ECF No. 216.) On February 23, 2017, a stipulation and order of partial dismissal was entered in this action, dismissing with prejudice Concord and its employees and certain claims against the City for injuries occurring prior to December 15, 2008.  (ECF No. 258.)

On September 30, 2017, the Court granted in part and denied in part motions for summary judgment by defendants Heartshare and the City.  (ECF No. 281.)  The two *Jewels* cases (No. 12-cv-1895 and No. 15-cv-5760) were subsequently consolidated for trial due to the substantial overlap in factual background, witnesses, and evidence.  (ECF No. 273, Minute Entry 5/16/2017.)  The consolidated case proceeded with pre-trial motions and a pre-trial conference was scheduled to take place on June 16, 2020.  (Docket Order 3/17/2020.)

On March 19, 2020, RW filed a motion to withdraw as attorney of record on behalf of plaintiffs.  (ECF No. 304; No. 15-cv-5760, ECF No. 172.)  On March 20, 2020, Judge Tiscione granted RW's motion to withdraw and Steven M. Weiner and Marc Reibman were terminated as counsel from the case.  (Docket Order 3/20/2020.)

On May 4 and May 11, 2020, LK, plaintiffs, and defendants attended settlement conferences before Judge Tiscione.  (ECF Nos. 309, 310.)  On May 11, 2020, the parties

reached a tentative settlement agreement. (ECF No. 310.) The parties agreed to finalize the settlement and file a stipulation of dismissal after this Court resolved the attorneys' fee dispute. (*Id.*)

On May 12, 2020, plaintiffs filed a sealed motion to vacate RW's attorneys' fees lien and discharge RW from seeking any portion of plaintiffs' settlement due to "their abandonment of the case." (ECF No. 311-1.) On May 13, 2020, this Court terminated without prejudice plaintiffs' motion to vacate RW's attorneys' fees lien and discharge RW's claims for fees and directed plaintiffs to seek leave for a pre-motion conference, as required by this Court's Chambers Practices, section IV.B. (Docket Order 5/13/2020.)

On May 15, 2020, plaintiffs and LK sought leave for a pre-motion conference in both actions (No. 12-cv-01895 and No. 15-cv-5760) and, once again, requested to move to vacate a lien placed by plaintiffs' former counsel RW on funds paid to or on behalf of plaintiffs, and an order discharging RW from receiving any fees beyond those received in 2017 due to "their abandonment of the case and of their clients." (ECF No. 312; No. 15-cv-5760, ECF No. 182.) On May 19, 2020, RW disputed LK's assertion that RW was not entitled to any attorneys' fees and represented that RW was "required to withdraw its representation" and that

there was "no ethical violation and, significantly, RW was not discharged for cause."  (ECF No. 314.)

The Court held a telephonic status and pre-motion conference on May 21, 2020 to discuss the settlement and the fee dispute between LK and RW.  Unable to reach a resolution of the fees dispute during the conference, the Court noted its jurisdiction to resolve the dispute and approved a briefing schedule.  (*See* Minute Entry 5/21/2020.)  During the May 21, 2020 conference with this Court, RW agreed not to assert a claim for any additional fees from plaintiffs or defendants, and this Court ordered that plaintiffs each be provided with one-third of the settlement.  (*Id.*)  On July 23, 2020, the parties filed the complete set of moving papers and supporting submissions on the docket relating to the instant fees dispute between LK and RW. (*See* ECF Nos. 317-326.)

## II.  Legal Representation During the Litigation

Plaintiffs Cyris Jewels and Diamond Jewels retained LK to represent them in the underlying civil rights actions against various defendants, including the City of New York.  (Kubitschek Decl. ¶¶ 9, 24.)  Pursuant to LK's "Retainer Agreement – Civil Rights Case" (the "retainer agreements"), if plaintiffs prevailed on or settled their claims, LK would receive "the greater of a) one-third of the recovery, or b) the attorneys' fees computed at their regular hourly rates, using those rates

current at the time payment is made." (ECF No. 325-5, RW Ex. 5, LK's Retainer Agreements, at 4-6, 9-11.) The retainer agreements also provided that if more than one law firm represented plaintiffs, "the total attorneys' fees will be divided so that each firm will receive, for each attorney who has worked on the case, a pro rata share of all attorneys' fees paid out of the termination of the case." (*Id.* at 5, 10.)

On May 15, 2015, LK retained the law firm RW as trial counsel for *Jewels v. Casner*, 12-cv-1895. (Kubitschek Decl. ¶ 20; Weiner Decl. ¶ 2.) The two law firms entered into a "Co-Counsel Agreement" (the "co-counseling agreement"), which outlined each firm's responsibilities and share of legal fees. (*See* ECF No. 321-2, LK Ex. 2, Co-Counsel Agreement.) Specifically, according to the co-counseling agreement, both firms agreed "to share the contingent portion of net legal fees 55% to [RW] and 45% to LK." (*Id.* at 1.) The law firms also agreed to share the "ongoing case expenses in the same proportion (55% RW and 45% LK)," with each firm be "reimbursed in full for all case expenses paid for by that firm." (*Id.*) As part of the agreement, LK was tasked with the "'paperwork' related to the case, such as motions, letter motions, document demands, interrogatories, jury instructions," and the like, while RW was tasked with taking and defending depositions and preparing and appearing for trial if necessary. (*Id.*) The co-

counseling agreement did not specify how the fees would be allocated, in the event one of the law firms withdrew from representation. (*See id.*) The co-counseling agreement was agreed upon and executed on May 15, 2015. (*Id.* at 2.)

As discussed above, the case was partially settled in early 2017 (the "2017 settlement"). The 2017 settlement was for a total of $1,500,000, with part of the settlement proceeds used to reimburse RW and LK for attorneys' fees and costs. (Kubitschek Decl. ¶¶ 33-34; Weiner Decl. ¶¶ 23, 31-32.) In total of the 2017 settlement proceeds,, RW was reimbursed $28,128.32 for expenses and $265,328.62 in fees and LK received $24,624.60 for expenses and $271,087.05 in fees. (Kubitschek Decl. ¶¶ 33-34; Weiner Decl. ¶ 31.)

## III.   RW's Withdrawal from the Litigation

The parties dispute the nature and circumstances of RW's withdrawal from the litigation. According to LK, in mid-2018, RW asserted that the plaintiffs' $50,000 escrow fund, which had been created in 2017 and used to pay case expenses, had been exhausted. (Kubitschek Decl. ¶ 43.) Plaintiffs subsequently asked RW where the money had gone and requested an accounting of the firm's records of the expenditures and the invoices for those expenses. (Kubitschek Decl. ¶ 43; *see also* Cyris Jewels Decl. ¶¶ 6-8.) LK represents that RW was "extremely offended" by this request, which purportedly

"impugned the honesty and integrity" of Mr. Reibman and Mr. Weiner.  (Kubitschek Decl. ¶ 45; *see also* Cyris Jewels Decl. ¶ 9.)  Subsequently, plaintiffs met with RW and LK to discuss the expenditures and RW agreed to provide and accounting and the invoices.  (Kubitschek Decl. ¶ 46.)

As the case progressed through summary judgment, LK represents that RW disagreed with the division of legal work, contrary to the co-counseling agreement, and also disagreed over whether to share this Court's September 30, 2019 summary judgment decision with the plaintiffs.  (Kubitschek Decl. ¶¶ 52-60.)

The case proceeded to pre-trial and trial preparation. LK represents that in approximately November 2019, RW called and reported that the plaintiffs' $50,000 escrow fund once again had been depleted and requested that each plaintiff advance an additional $20,000 to cover trial expenses.  (Kubitschek Decl. ¶ 61; Cyris Jewels Dec. ¶ 11.)  According to LK, neither plaintiff had the funds to cover an additional $20,000 expense and both plaintiffs again asked to see an accounting of RW's expenses. (Kubitschek Decl. ¶ 62; Cyris Jewels Dec. ¶ 12.)  To prevent further disagreement, LK suggested that both plaintiffs and plaintiffs' counsel, add $10,000 each into the escrow account, to which RW tentatively agreed.  (Kubitschek Decl. ¶¶ 67-68.) On February 25, 2020, a mediation was scheduled at JAMS.

(Reibman Decl. ¶ 29.)  According to LK and plaintiffs, RW refused to communicate with the plaintiffs outside the presence of the mediator.  (Kubitschek Decl. ¶¶ 69-75; Cyris Jewels Decl. ¶ 15; Diamond Jewels Dec. ¶ 20.)  The mediation was unsuccessful and the case continued.

On February 28, 2020, LK represents that RW stated, over phone, that RW had stopped working on plaintiffs' cases and would not continue any work until each plaintiff advanced expenses in an increased amount of $15,000.  (Kubitschek Decl. ¶ 76.)  Mr. Weiner allegedly said that plaintiffs "have to put their money down or I'm out" and characterized the plaintiffs as "ungrateful."  (*Id.*)  In response, LK sent an email to RW on February 28, 2020, allegedly memorializing the earlier discussion over the phone, highlighting the strengths of the case at trial, and memorializing RW's proposal to proceed with the case.  (*See* ECF No. 321-6, LK Ex. 6, February 28, 2020 Email from Carolyn A. Kubitschek to Marc Reibman.)

On March 2, 2020, RW responded by email and disagreed with the substance of LK's email regarding the strengths of the case at trial and further questioned the clients' willingness to heed the advice of counsel.  (*See* ECF No. 321-6, Ex. 6, March 2, 2020 Email from Marc Reibman to Carolyn A. Kubitschek.)  RW set forth its proposal to continue with the case.  (*Id.*)  With respect to the escrow fund, RW agreed to the "four way split of

disbursements" between plaintiffs, LK, and RW, as previously agreed upon, and reiterated its request that each party, including both plaintiffs, put $15,000 into the escrow fund to pay ongoing expenses.  (*Id.*)

On March 9, 2020, RW emailed LK and stated that in order for RW to continue as trial counsel, each plaintiff needed to put $20,000 into the escrow account for expenses. (*See* ECF No. 321-7, LK Ex. 7, March 9, 2020 Email from Marc Reibman to Carolyn A. Kubitschek.)  RW confirmed that if the stated conditions were "not agreeable," plaintiffs and LK could "work out a strategy for going forward without" RW.  (*Id.*)

On March 11, 2020, Mr. Reibman emailed the plaintiffs and explained the anticipated future expenses associated with the pre-trial order and trial.  (*See* ECF No. 321-8, Ex. 8, March 11, 2020 Email from Marc Reibman to Diamond Jewels, Cyris Jewels, and LK.)  Mr. Reibman made two suggestions for moving forward with the case: (1) obtain a loan from a litigation-funding company, or (2) place $50,000 into the escrow fund to cover the anticipated expenses.  (*Id.*)  RW also stated that it was willing to try to settle the case for a sum defendants may be willing to pay at mediation.  (*Id.*)  RW requested a response regarding the litigation expenses within twenty-four hours in order to start preparing for pre-trial matters.  (*Id.*)  Both plaintiffs told RW that they were interested in reopening

settlement discussions with defendants, but did not confirm they each would advance an additional $25,000 for expenses. (Cyris Jewels Decl. ¶ 22; Diamond Jewels Decl. ¶ 23.)

RW proceeded to reopen settlement discussions. On March 12, 2020, LK sent RW an email requesting to be included on "all discussions with opposing counsel, both in person and by phone." (ECF No. 321-10, LK Ex. 10, March 12, 2020 Email from Carolyn A. Kubitschek to Steven Weiner.) That same day, RW responded and clarified that RW was not speaking with opposing counsel, but instead was speaking with the mediator. (ECF No. 321-11, Ex. 11, March 12, 2020 Email from Steven Weiner to Carolyn A. Kubitschek.) In response, LK requested to be included on all communications with the mediator. (ECF No. 321-12, LK Ex. 12, March 12, 2020 Email from Carolyn A. Kubitschek to Steven Weiner.)

On March 11, 2020, a day before RW reopened settlement discussions with the mediator, LK, without informing RW, independently reached out to the mediator regarding the ongoing settlement discussions. (Kubitschek Reply Decl. ¶ 53; ECF No. 323-6, LK Reply Ex. 33, March 11, 2020 Email from Carolyn A. Kubitschek to JAMS mediator.)

On March 12, 2020, after learning that LK had independently contacted the mediator without informing RW, RW sent an email to LK expressing its disagreement with the

settlement strategy and requesting that "all communications to the mediator" be through RW only.  (ECF No. 321-13, LK Ex. 13, March 12, 2020 Email from Marc Reibman to Carolyn A. Kubitschek.)  In response, the next day LK replied and stated that LK only contacted the mediator because RW represented that it would no longer work on the case until the plaintiffs agreed to RW's requested cash advancements for expenses.  (ECF No. 321-14, LK Ex. 14, March 13, 2020 Email from Carolyn A. Kubitschek to RW.)  LK voiced no objection to RW "taking the lead in settlement," but clarified that, pursuant to the plaintiffs' request, LK "must be involved in all discussions with the mediator."  (*Id.*)  RW expressed some confusion by LK's email and reiterated that "to avoid confusion and counterproductive inconsistent messaging, [RW] must be the sole line of communication to the mediator without arranging three way calls, etc."  (ECF No. 321-15, LK Ex. 15, March 13, 2020 from RW to Carolyn A. Kubitschek.)  LK disagreed with any purported confusion arising from a three-way call with the mediator and proposed that another "non-speaking representative" from LK join the settlement calls if RW was uncomfortable with Ms. Kubitschek's presence.  (ECF No. 321-16, LK Ex. 16, March 13, 2020 Email from Carolyn A. Kubitschek to RW.)  LK stated that plaintiffs were "suspicious and skeptical" of RW and would not agree to settlement discussions taking place in the absence of

LK's presence.  (*Id.*)  LK represents that RW did not respond. (Kubitschek Decl. ¶ 98.)

On March 13, 2020, RW emailed plaintiffs and informed them that RW would "no longer be able to represent" plaintiffs in the action.  (ECF No. 325-21, RW Ex. 21, March 13, 2020 Email from RW to Diamond Jewels and Cyris Jewels.)  RW explained that in its efforts to secure a settlement on behalf of plaintiffs, its communications with the mediator were "confused and disorganized" due to LK's contact with the mediator without RW's knowledge.  (*Id.*)  Under these circumstances, RW represented that it could not "continue to represent [plaintiffs] in a situation where [LK] is suspicious of us."  (*Id.*)  RW also expressed its frustration that LK would not permit RW to "speak to the mediator on the telephone" unless LK was present and that this "crazy counterproductive atmosphere" prevented RW from effectively representing plaintiffs.  (*Id.*)  In sum, RW stated that because of LK's interference, RW could no longer represent plaintiffs.  (*Id.*)

On March 19, 2020, RW filed its motion to withdraw as attorney of record on behalf of plaintiffs.  (ECF No. 304; No. 15-cv-5760, ECF No. 172.)  On March 20, 2020, Judge Tiscione granted RW's motion to withdraw and Mr. Weiner and Mr. Reibman were terminated from the case.  (Docket Order 3/20/2020.)

On March 20, 2020, Mr. Reibman sent an email message to counsel for HeartShare defendants, claiming "an equitable, contractual, and statutory lien on any funds paid to or on behalf of plaintiffs Cyris Jewels and Diamond Jewels whether by settlement, judgment, or otherwise." (ECF No. 321-1, LK Ex. 1, Email from RW to Adam Guzik and David Rutherford.) Mr. Reibman stated that "[n]o funds should be paid or disbursed in either case without notifying [RW]." (*Id.*)

On May 11, 2020, the parties reached a tentative settlement after a settlement conference before Judge Tiscione. (ECF No. 310.)

## LEGAL STANDARD

"New York Judiciary Law § 475 governs attorneys' charging liens in federal courts sitting in New York." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998). "New York's statutory charging lien is a device to protect counsel against 'the knavery of his client,' whereby through his effort, the attorney acquires an interest in the client's cause of action," *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 177 (2d Cir. 2001) (quoting *In re City of New York*, 5 N.Y.2d 300, 307 (1959)). The New York statute provides that:

> [f]rom the commencement of an action, special
> or other proceeding in any court or before any
> state, municipal or federal department, . . .

17

> the attorney who appears for a party has a
> lien upon his client's cause of action, claim
> or counterclaim, which attaches to a verdict,
> report, determination, decision, judgment or
> final order in his client's favor, and the
> proceeds thereof in whatever hands they may
> come; and the lien cannot be affected by any
> settlement between the parties before or after
> judgment, final order or determination. The
> court upon the petition of the client or
> attorney may determine and enforce the lien.

N.Y. Jud. Law § 475.  The lien itself "attaches to the client's ultimate recovery in the same case." *Casper v. Lew Lieberbaum & Co.*, No. 97-cv-3016(JGK)(RLE), 1999 WL 335334, at *8 (S.D.N.Y. May 26, 1999).  "[T]he Second Circuit has long recognized that the lien created by § 475 is enforceable in federal courts in accordance with its interpretation by New York courts." *Itar-Tass Russian News Agency*, 140 F.3d at 449 (internal quotation omitted).  An attorney whose representation has terminated upon an order granting his motion to withdraw may still claim entitlement to the lien, so long as his withdrawal was for "good cause." *See, e.g.*, *Stair v. Calhoun*, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010) (collecting cases).  The burden of proof of good cause for termination falls on the party terminating the relationship. *See Allen v. Rivera*, 509 N.Y.S.2d 48, 50 (2d Dep't 1986) ("[T]he withdrawing attorney must show such a condition as clearly justifies his withdrawal." (citation omitted)); *see also Casper*, 1999 WL 335334, at *6 ("The burden

rests with plaintiffs to demonstrate that they had cause to terminate the attorney-client relationship.").

In a fee dispute between a discharged attorney and his client, "[i]f the lawyer is discharged without cause and prior to the conclusion of the case . . . he or she may recover either (1) in quantum meruit, the fair and reasonable value of the services rendered, or (2) a contingent portion of the former client's ultimate recovery, but only if both of the parties have so agreed." *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 (2d Cir. 2004). "Where the dispute is only between attorneys, however," New York case law provides for slightly different rules: "[t]he outgoing attorney may elect to take compensation on the basis of a presently fixed dollar amount based upon quantum meruit for the reasonable value of services or, in lieu thereof, the outgoing attorney has the right to elect a contingent percentage fee based on the proportionate share of the work performed on the whole case." *Lai Ling Cheng v. Modansky Leasing Co.*, 539 N.E.2d 570, 572 (N.Y. 1989).

## DISCUSSION

Having reviewed the record and the parties' submissions, the Court concludes that both RW and LK are entitled to fees and costs in the amounts discussed below.

I.    **Supplemental Jurisdiction to Resolve the Fee Dispute**

As an initial matter, the Court will address RW's contention that this Court lacks jurisdiction under 28 U.S.C. § 1367 to resolve the present fee dispute. (RW Mem. 7-9.) This Court has previously ruled that it has jurisdiction to determine the fee dispute, pursuant to 28 U.S.C. § 1367(a), and that it will exercise its jurisdiction. (*See* ECF No. 325-56, RW Ex. 56, Transcript of May 21, 2020 Telephone Status Conference, 15:1-8.) Having reviewed the parties' submissions and controlling precedent, the Court finds that, contrary to RW's argument, it is proper for the Court to exercise supplemental jurisdiction over the fee dispute that arises from the litigation and settlement of this action.

Supplemental jurisdiction, governed by 28 U.S.C. § 1367, allows a court to hear disputes that are part of the "same case and controversy" as the underlying action. *See Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335-36 (2d Cir. 2006). A fee dispute arising out of an attorney's representation of a party in federal court has been held to present a "common nucleus of operative fact" that supports the exercise of supplemental jurisdiction. *See Fisher, Byrialsen & Kreizer, PLLC v. Stevens, Hinds & White, P.C.*, 688 F. App'x 46 (2d Cir. 2017) (summary order) ("Federal courts have jurisdiction over the parties' attorneys' fees dispute pursuant

to 28 U.S.C. § 1367." (citing *Itar-Tass Russian News Agency*, 140 F.3d at 445-46)). A federal court thus has the power to hear such a dispute, on the theory that the court has "obtained total familiarity with the subject matter of the [underlying] suit and the professional services of the moving parties thereon and of the virtual totality of all the compensation arrangements contended for and disputed." *See Achtman*, 464 F.3d at 336 (quoting *Itar-Tass Russian News Agency*, 140 F.3d at 445).[3]

In this instance, particularly in view of the Court's familiarity with the consolidated case and the steps taken by plaintiffs' counsel to pursue plaintiffs' claims over the course of nine years, the Court concludes that it should exercise its discretion in finding supplemental jurisdiction and addressing the parties' present fee dispute.

## II.   RW's Withdrawal for Good Cause

As a threshold matter, RW claims that it is not seeking to lift a charging lien on the contingency fee and that

---

[3]      Where, as here, section 1367 provides the basis for supplemental jurisdiction over a fee dispute, the Court may decline to exercise such jurisdiction only on the basis of an enumerated statutory exception. *See Itar-Tass Russian News Agency*, 140 F.3d at 448. Section 1367 lists the following permissible reasons for declining to exercise supplemental jurisdiction: "(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). None of the categories applies in the instant case; therefore, the Court will exercise its supplemental jurisdiction authority, pursuant to 28 U.S.C. § 1367(a), and determine the appropriate attorneys' fees and costs.

LK's references to such charging lien are immaterial here.  (RW Mem. at 7, 9.)  Indeed, RW argues that the "moment RW agreed to release plaintiffs' share of the settlement to plaintiffs at the May 21, 2020 status conference, the dispute no longer involved" a charging lien under New York Judiciary Law § 475 ("Section 475").  (RW Mem. at 7.)  This Court disagrees and concludes that RW retains an equitable interest in a portion of the one-third of plaintiffs' settlement for fees.  Furthermore, for the reasons set forth below, the Court concludes that RW withdrew from representation for good cause, thus permitting RW to recover a portion of the fees under its charging lien.

First, as explained below and contrary to RW's representation that it "release[d]" any alleged charging lien (RW Mem. at 7, 9), RW retained a charging lien on one-third of the settlement and notified defendant counsel of RW's lien.  New York law provides that a charging lien will attach to any "verdict, report, determination, decision, award, settlement, judgment or final order" rendered in plaintiff's favor, if plaintiff ultimately achieves a favorable result.  *See* N.Y. Jud. Law § 475; *see also Gonzalez v. Trees R Us Inc.*, No. 14-cv-7487 (AKT), 2019 WL 4602704, at *6 (E.D.N.Y. Sept. 23, 2019) ("[T]he charging lien set forth in Section 475 is equally enforceable against settlement funds as well as monetary awards resulting from a favorable judicial disposition.").  Thus, where, as here,

a plaintiff receives a favorable disposition of the litigation in the form of a settlement, an attorney who resigned may retain a charging lien over such settlement so long as the attorney withdrew from the representation for good cause. *See Stair*, 722 F. Supp. 2d at 267. Indeed, the record also confirms that RW believed it retained an equitable interest in the settlement because RW notified defendants of a charging lien the same day it withdrew from its representation. (*See* ECF No. 321-1, LK Ex. 1 (Email from RW to defense counsel Adam Guzik and David Rutherford, noting that RW "maintain[s] an equitable, contractual and statutory lien" on any funds paid to plaintiffs, "whether by settlement, judgment or otherwise," and requesting that "[n]o funds should be paid or disbursed in either case without notifying [RW]").) The Second Circuit has explained that Section 475 "is remedial in character, and hence should be construed liberally in aid of the object sought by the legislature, which was to furnish security to attorneys by giving them a lien upon the subject of the action." *Itar-Tass Russian News Agency*, 140 F.3d at 450 (quoting *Fischer-Hansen v. Brooklyn Heights R. Co.*, 173 N.Y. 492, 495 (1903)). Hence, liberally construing Section 475, RW's equitable interest in a portion of one third of plaintiffs' settlement is a valid and enforceable charging lien so long as RW withdrew from representation for good cause. *See Pettiford v. City of*

*Yonkers*, No. 14-cv-6271 (JCM), 2020 WL 1331918, at *3 (S.D.N.Y. Mar. 20, 2020) (An attorney who withdraws from a matter is still entitled to enforce a charging lien so long as he had "good cause" to withdraw); *see also Itar-Tass Russian News Agency*, 140 F.3d at 451 ("[P]articipation in the proceeding at one point as counsel of record is a sufficient predicate for invoking the statute's protection."); *Perez v. Progenics Pharm., Inc.*, 204 F. Supp. 3d 528, 553 (S.D.N.Y. 2016) ("An attorney's permitted withdrawal from representation of a party does not affect his entitlement to the statutory lien under Section 475." (internal citation omitted)).

Second, having reviewed the record, the parties' submissions, the New York Rules of Professional Conduct, and controlling precedent, the Court concludes that RW withdrew from representation for good cause. "Under New York law, good cause for withdrawal exists where there are irreconcilable differences with respect to the proper course to be pursued in the litigation, where the client flatly challenged counsel's loyalty and professional integrity, or where the relationship between plaintiffs and their attorney has deteriorated to the point where further representation is inappropriate." *Karimian v. Time Equities, Inc.*, No. 10-cv-3773, 2011 WL 1900092, at *4 (S.D.N.Y. May 11, 2011) (internal citation, quotation marks, and citation omitted). Furthermore, as relevant here, the New York

Rules of Professional Conduct provide that a lawyer may withdraw from representing a client when, "the lawyer's inability to work with co-counsel indicates that the best interest of the client likely will be served by withdrawal." N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0 (Rule 1.16(c)(8) (declining or terminating representation)).

Here, RW argues and the record supports a finding, that RW had good cause to withdraw from representation because RW's opposition to LK's insistence to be included in the settlement negotiations and plaintiffs' suspicions of RW made it impossible for RW to represent the plaintiffs' best interests. For instance, as summarized above, the record shows that there was an ongoing dispute between LK and RW regarding the settlement strategy and at least one instance of miscommunication with the mediator. (*See* Reibman Decl. ¶¶ 49-51; ECF No. 321-16, LK Ex. 16, March 13, 2020 Email from Carolyn A. Kubitschek to RW; ECF No. 325-21, RW Ex. 21, March 13, 2020 Email from RW to Diamond Jewels and Cyris Jewels.) This evidence supports RW's position that its "inability to work with" LK indicated that "the best interest of the client [would] likely be served by withdrawal." N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0 (Rule 1.16(c)(8)); *see also Joseph Brenner Assocs., Inc. v. Starmaker Entm't, Inc.*, 82 F.3d 55, 57 (2d Cir. 1996) (concluding that an attorney's request to withdraw was

appropriate where the attorney was no longer able to represent her client effectively, due to, among other reasons, an inability to work with co-counsel).  Moreover, New York law also permits an attorney to withdraw for good cause where there is a serious deterioration of the attorney-client relationship or where the client "flatly challenged counsel's loyalty and professional integrity."  *See Karimian*, 2011 WL 1900092, at *4 (quoting *Lake v. M.P.C. Trucking Inc.*,718 N.Y.S.2d 903, 904 (3d Dep't 2001)); *see also McGuire v. Wilson*, 735 F. Supp. 83, 85 (S.D.N.Y. 1990) (allowing attorney to withdraw where the "relationship between the parties has deteriorated beyond repair," although fault for that deterioration was disputed).  In this case, the record also supports a finding that plaintiffs' relationship with RW had deteriorated to a point where plaintiffs were so "suspicious and skeptical" of RW's performance, that plaintiffs demanded LK to supervise any and all settlement negotiations conducted by RW.  (*See* ECF No. 321-16, LK Ex. 16, March 13, 2020 Email from Carolyn A. Kubitschek to RW.).  For the foregoing reasons, the Court concludes that RW carried its burden of showing that good cause existed for it to withdraw from representation.[4]

---

[4]    Because the Court finds that RW demonstrated good cause for its withdrawal from representation, the Court rejects LK's claim that RW is not entitled to any legal fees.  In any event, even if RW withdrew without good cause and forfeited its right to a charging lien, *see Antonmarchi v. Consolidated Edison Co. of New York*, 678 F. Supp. 2d 235, 241 (S.D.N.Y.

### III.   RW's Fees under the Charging Lien

Having concluded that RW had good cause to withdraw from representation and thus retained a charging lien on one-third of plaintiffs' settlement, the Court must now assess the value of RW's charging lien.[5]

Where the amount of a charging lien has been fixed by agreement, execution is generally appropriate on the settlement or judgment for the amount agreed to by the parties, *Itar-Tass Russian News Agency*, 140 F.3d at 453, subject to the limitation that, because a charging lien is an equitable remedy, the amount of the lien must be "fair," *Sutton v. N.Y.C. Trans. it Auth.*, 462 F.3d 157, 161 (2d Cir. 2006).  In considering whether the amount of a charging lien is fair, the district court looks to "the terms of the percentage agreement, the nature of the litigation, difficulty of the case, time spent, amount of money involved, results achieved and amounts customarily charged for

2010), RW would still be entitled to equitable remuneration for work performed in the case, *see Louima v. City of New York*, No. 98-cv-5083, 2004 WL 2359943, at *3 (E.D.N.Y. Oct. 5, 2004) (finding that an attorney "withdrew from the case without cause," but concluding that in the interest of equity, the attorney was still "entitled to fees based on work performed" in the litigation).

[5]   RW argues that the Court should refer this fees dispute to Judge Tiscione in order to conduct further evidentiary hearings to determine the amount of recovery due to each firm.  (RW Mem. at 1, 3.)  "However, when presented with detailed submissions, courts routinely decline to hold such a hearing."  *Kovach v. City University of New York*, No. 13-cv-7198(LGS), 2015 WL 3540798, at *4 (S.D.N.Y. June 4, 2015); *see also Winkfield v. Kirschenbaum & Phillips, P.C.*, No. 12-cv-7424 (JMF), 2013 WL 371673, at *3 (S.D.N.Y. Jan. 29, 2013) (deciding issue of lien on a "careful review of the record").  Based on the detailed submissions provided by the parties, the Court declines to refer this case for further evidentiary proceedings.

similar services in the same locality." *Id.* (internal quotation marks omitted).  Although this Court is not bound by the parties' co-counseling agreement, such an agreement may guide the Court in determining the amount of the charging lien.  *See cf. Stair*, 722 F. Supp. 2d at 268–69 (a district court is not bound by the retainer agreement in assessing the value of the charging lien); *McDermott v. Great Am. All. Ins. Co.*, No. 02-cv-0607 (NAM) (DEP), 2006 WL 2038452, at *3 (N.D.N.Y. July 18, 2006) (same).  The amount of the charging lien "is a matter within the sound discretion of the trial court." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 149 (2d Cir. 1998) (internal quotation omitted).

Where, however, a fee dispute arises between former counsel and co-counsel, as is the case here, rather than between counsel and client, "the rules are somewhat different.  The discharged attorney may elect to receive compensation immediately based on quantum meruit or on a contingent percentage fee based on his or her proportionate share of the work performed on the whole case. That right can only be limited by waiver or operation of law." *Cohen v. Grainger, Tesoriero & Bell*, 81 N.Y.2d 655, 658 (1993) (internal citation omitted). Thus, the New York Court of Appeals established the applicable rule with respect to determinations of the amount of a charging lien in the context of fee disputes between successive counsel.

The Second Circuit has affirmed that *Cohen* remains "the proper authority to guide decisions in disputes between lawyers or sets of lawyers." *Budin, Reisman, Kupferberg & Bernstein, LLP. v. Law Offices of Rosemarie Arnold*, 79 F. App'x 460, 461 (2d Cir. 2003) (summary order); *see also Borg v. 86th & 3rd Owner, LLC*, No. 08-cv-05913 (RJH), 2012 WL 234383, at *6 (S.D.N.Y. Jan. 24, 2012) ("[T]he New York rule differs when the fee dispute is between outgoing and incoming counsel. The outgoing attorney may elect to receive a fixed-dollar sum in quantum meruit, but also has the right to elect a contingent percentage fee based on the proportionate share of the work performed on the whole case.").[6]

In this case, RW requests fees in the amount of 55% of one-third of plaintiffs' settlement, as provided for in the parties' co-counseling agreement.[7]  (RW Mem. at 3.)  RW argues that it is entitled to the 55% share of the legal fees because

---

[6]    The Court acknowledges that *Cohen* applied to circumstances where an attorney was discharged without good cause.  Nonetheless, as explained and reaffirmed by the Second Circuit, district courts should apply the reasoning and rule in *Cohen* as the "proper authority" to examine to fee disputes "between lawyers or sets of lawyers."  *Budin, Reisman, Kupferberg & Bernstein, LLP.*, 79 F. App'x at 461.  Thus, although RW withdrew with good cause here and was not discharged by plaintiffs, the rule in *Cohen* applies with equal force because the instant fee dispute involves two law firms and bears no consequence to the clients.  In any event, as discussed below, even if this Court declined to follow *Cohen* and instead measured RW's fees under a theory of quantum meruit, the outcome and apportionment of fees would be the same.

[7]    The parties have not disclosed the total value of the settlement to the Court.  Thus, for the purpose of calculating the appropriate apportionment of attorneys' fees, the Court bases its determination on its familiarity with the parties' representation during the course of the litigation, the record, and the submissions provided to the Court in support of the fees motions.

it performed its contract with LK and "went over and beyond what it was contracted to do to ensure a successful outcome for the plaintiffs." (Weiner Decl. ¶ 1.)  Thus, RW bases its request on its co-counseling agreement with LK, which provided that both firms agreed "to share the contingent portion of net legal fees 55% to [RW] and 45% to [LK]." (*See* ECF No. 321-2, LK Ex. 2, Co-Counsel Agreement, at 1.)  As noted above, however, the Court is not bound to the parties' co-counseling agreement when determining the overall amount due under the charging lien.  *See Agence France Presse v. Morel*, No. 10-cv-2730 (AJN), 2015 WL 13021413, at *8 (S.D.N.Y. Mar. 23, 2015) ("[A]ny such agreement" relating to the distribution of attorneys' fees is "subject to the limitation that, because a charging lien is an equitable remedy, the amount of the lien must be fair." (citing *Sutton*, 462 F.3d at 161)).  Moreover, the Court also notes that the parties' co-counseling agreement is silent as to the allocation of legal fees to each law firm in the event a firm withdraws from representation.  For these reasons, although the Court may consider the co-counseling agreement in determining the appropriate fees, the parties' contractual "agreement should inform, but not dictate, the Court's assessment of a reasonable fee." *Agence France Presse v. Morel*, No. 10-cv-2730 (AJN), 2015 WL 13021413, at *9 (S.D.N.Y. Mar. 23, 2015); *see also Stair*, 722 F. Supp. 2d at 268-69.

Furthermore, in light of the New York Court of Appeals' decision in *Cohen*, the Court finds that the determination of the amount of RW's charging lien should be "a contingent percentage fee based on his or her proportionate share of the work performed on the whole case," *Gonzalez*, 2019 WL 4602704, at *6, rather than on the basis of quantum meruit. *See Cohen*, 81 N.Y.2d at 660 ("Where an election is not made or sought at the time of discharge, the presumption should be that a contingent fee has been chosen."); *accord Russo v. City of New York*, 853 N.Y.S.2d 87 (2d Dep't 2008) ("Where there is a fee dispute between attorneys, the amount due an outgoing attorney is based on the proportionate share of the work performed."); *Jones v. Birnie Bus Serv. Inc.*, 789 N.Y.S.2d 789, 790 (4th Dep't 2005) (in allocating a contingent fee between successive counsel, courts must "determine 'the relative contributions of the lawyers'"). In this case, at the time RW withdrew from the case, RW sought to enforce "an equitable, contractual, and statutory lien on any funds paid to or on behalf of plaintiffs Cyris Jewels and Diamond Jewels whether by settlement, judgment, or otherwise." (ECF No. 321-1, LK Ex. 1, Email from RW to Adam Guzik and David Rutherford.) In other words, RW did not seek to be paid in quantum meruit immediately at the time of discharge, but instead sought payment at the end of the litigation by asserting a lien on the "settlement, judgment, or other[]."

*Id.*; s*ee Universal Acupuncture Pain Servs., P.C.*, 370 F.3d at 263 ("Under New York law, a lawyer's right to recover in quantum meruit accrues immediately upon discharge." (collecting cases)). Thus, this Court presumes that, by asserting a lien rather than expressly electing quantum meruit at the time RW's motion to withdraw was granted, RW sought a contingent fee based on its proportionate share of the work performed. *See Adams v. City of New York*, No. 07-cv-2325 (FB) (RER), 2014 WL 4649666, at *12 (E.D.N.Y. Sept. 16, 2014) ("Absent an express election of quantum meruit valuation of services at the time of discharge, the law presumes that the outgoing attorney has chosen a contingency fee computed as a percentage of recovery at the close of the case." (citing *Cohen*, 81 N.Y.2d at 659-60)).

In assessing an attorney's proportionate share of a recovery, courts consider the following factors: "the time and labor spent by each, the actual work performed, the difficulty of the questions involved, the skills required to handle the matter, the attorney's skills and experience, and the effectiveness of counsel in bringing the matter to resolution." *Foppiano v. City of New York*, 00-cv-7968 (FM), 2002 WL 31202716 at *4 (S.D.N.Y. Sept. 25, 2002) (quoting *Buchta v. Union Endicott Cent. Sch. Dist.*, 745 N.Y.S.2d 143, 145 (3d Dep't 2002)); *see also Lai Ling Cheng v. Modansky Leasing Co., Inc.*, 539 N.E.2d 570, 572 (N.Y. 1989)(courts consider factors such as

"the amount of time spent by each lawyer on the case, the work performed and the amount of recovery").

Applying these factors here, the 55% share of one third of the settlement reserved for legal fees sought by RW is not "fair" under the circumstances because it is inconsistent with the proportionate share of RW's services.  Significantly, RW withdrew on March 20, 2020 and did not assist plaintiffs in ultimately negotiating the final settlement in May 2020.  Thus, for the reasons set forth below, the Court finds that RW is entitled to 45% of the share of legal fees and LK is entitled to 55% of the share of legal fees.  In making this determination, the Court acknowledges that, in exercising its discretion, "there is no formula or bright-line rule that can be applied in quantifying the respective contributions' of the discharged and new attorneys."  *Gonzalez*, 2019 WL 4602704, at *8.

A. <u>Time and Labor Spent</u>

Regarding the time and labor spent by the attorneys, it is undisputed that LK devoted significantly more time to both cases, including representing plaintiffs through the final settlement in May 2020.

According to the submissions provided to the Court, LK spent 2,923.95 hours of time on Cyris Jewels' case and 2,112.11 hours of time on Diamond Jewels' case.  (Kubitschek Decl. ¶ 141; LK Exs. 25, 26).  RW represents that it devoted a total of

"about 2,400 hours" to the related cases before withdrawing. (Weiner Decl. ¶ 128; Weiner Reply Decl. ¶ 87; RW Exs. 2, 22, 23, 24.)  In support of RW's estimation, RW describes its involvement in different stages of the litigation.  From July 2018 until the plaintiff's motion papers were exchanged on December 11, 2018, RW spent approximately 342 hours of work on documents for the *Jewels v. Lewis* summary judgment motions. (Weiner Decl. ¶ 107; RW Ex. 23.)  In preparation for mediation, RW spent approximately 80 hours revising a mediation statement provided by LK.  (Weiner Decl. ¶ 116; RW Ex. 47.)  Both LK and RW attended the mediation at JAMS, which ultimately was unsuccessful.  (Weiner Decl. ¶ 121.)  Mr. Reibman notes that he spent 409.50 hours working on the *Jewels'* cases.  (Reibman ¶ 6; RW Ex. 2.)  Even assuming some of the 5,036.06 hours performed by LK could be discounted by the Court, the number of LK's hours would still undeniably exceed the hours performed by RW. Accordingly, based on the parties' representations and the supporting documentation, the Court concludes that LK devoted more time and labor to the related cases than RW.

   B. <u>Work Performed, Difficulty of Questions Involved, and Skills Required</u>

        In terms of the quantity and quality of tasks performed by LK and RW, the record shows that both parties were significantly involved in various aspects of the litigation.  LK

34

performed a range of tasks including case investigation, drafting and filing the complaint, conducting discovery and drafting related motions, preparing and defending depositions, opposing summary judgment motions in *Cyris Jewels v. Casner, et al.* (No. 12-cv-1895), moving for partial summary judgment in *Diamond Jewels v. Lewis, et al.* (No. 15-cv-5760), handling general motion practice, preparing for trial, and conducting settlement discussions. (*See* ECF No. 321-25, LK Ex. 25, LK Timesheets for Cyris Jewels' Representation; ECF No. 321-26, LK Ex. 26, LK Timesheets for Diamond Jewels' Representation.) RW was retained to represent Cyris Jewels in 2015 (three years after the initial complaint was filed), and was similarly involved in the discovery process in both cases, conducted depositions, assisted in defending and filing summary judgment motions, participated in mediation and settlement discussions, successfully negotiated the 2017 settlement, and prepared for trial by formulating witness outlines for direct and cross-examination, coordinating the appearance of expert witnesses, and finalizing exhibits. (*See* Weiner Decl. ¶¶ 13-25, 40, 57, 84, 88.)

  As to the difficulty of the questions presented to each law firm and the skill required by each firm, the attorneys generally operated and rendered specific services in two phases of the litigation – drafting and filing pleadings, discovery

demands and responses, and motions practice by LK, settlement by LK and RW, and trial preparation by RW.  (*See* ECF No. 321-2, LK Ex. 2, Co-Counsel Agreement (stating that LK was responsible for, among other things, motion practice, and RW was retained as trial counsel).)  Although the parties dispute the division of labor between LK and RW (*see* RW Mem. at 3; Reibman Decl. ¶¶ 19-31), the Court concludes that the skills required for each phase of litigation -- although different in type -- were substantially equal and that the legal questions presented were similarly challenging.  LK successfully navigated the case through discovery and then resisted defendants' motions while drafting plaintiffs' motions for summary judgment, before ultimately negotiating a favorable settlement in May 2021.  RW drafted submissions for and attended mediation and settlement conferences, prepared for trial, and obtained a favorable settlement in 2017.  For these reasons, this factor weighs in favor of neither party in the Court's analysis because both LK and RW demonstrated their significant contributions to the related cases.

      C. Attorney's Skills and Experience

      The Court recognizes that LK and RW are both very capable firms with many years of relevant experience.  This factor is thus neutral in the Court's analysis.

D. Effectiveness of Counsel in Bringing the Matter to Resolution

Finally, regarding the effectiveness of counsel in reaching a resolution, the Court notes that LK represented plaintiffs through the ultimate resolution of the case in the form of a favorable settlement in May 2021.  Although RW argues that its contributions were helpful in securing plaintiffs' ultimate settlement (RW Mem. at 5-6), it is undisputed that RW withdrew from representation before the settlement was achieved. Moreover, LK served as counsel from the very onset of the litigation in 2012, all the way through the successful settlement in 2020.  In addition, RW withdrew from representation before the scheduled pretrial conference and before the proposed pretrial order was due.  (*See* Docket Order 5/22/2020.)  Thus, this factor weighs in favor of LK.

On balance, LK's "proportionate share of the work performed on the whole case" was greater than RW's.  *Lai Ling*, 73 N.Y.2d at 458.  Although RW is entitled to compensation for its work as plaintiffs' attorney, its compensation, measured as a percentage of the resulting settlement, should be less than the amount to be awarded to LK.

Accordingly, the Court finds that LK should be apportioned 55% of the legal fees and RW should be apportioned 45% of the legal fees (i.e., one third of the settlement

reserved for fees).  In so finding, the Court bases its
determination on a careful review of the record, its familiarity
with the attorneys' performance and representation during this
litigation, and the parties' supporting submissions.
Furthermore, the Court also concludes that RW is entitled to a
smaller recovery due to its withdrawal from the litigation,
resulting in a smaller proportionate time committed to securing
plaintiffs' favorable settlement.  *See, e.g.*, *Gonzalez*, 2019 WL
4602704, at *9-10 (concluding that a 55%-45% apportionment of
fees was appropriate and equitable under the circumstances of
the case to reflect one firm's "slightly greater expenditure of
time . . . committed to the action as well as the additional
period of time it will spend in distributing the installment-
based settlement and winding down this case"); *Adams*, 2014 WL
4649666, at *14 (concluding that a 50%-50% apportionment of fees
between two law firms was a fair and equitable division).  The
Court, in its discretion, finds this apportionment of fees is
fair and equitable under the circumstances of this case in light
of the factors discussed above.  *See Sutton*, 462 F.3d at 161 ("A
charging lien, although originating at common law, is equitable
in nature, and the overriding criterion for determining the
amount of a charging lien is that it be 'fair.'" (internal
citations omitted)); *see also Young, Fenton, Kelsey & Brown,
P.C. v. Wein*, 976 N.Y.S.2d 584, 586 (3d Dep't 2013) ("The

ultimate fee apportionment is a discretionary matter for [the] Court, and will not be disturbed absent an improvident exercise thereof.").  Finally, the proportionate share of fees of 55% to LK and 45% to RW is also consistent with the retainer agreement entered into by LK and plaintiffs, which provided that if more than one law firm represented plaintiffs, "the total attorneys' fees will be divided so that each firm will receive, for each attorney who has worked on the case, a pro rata share of all attorneys' fees paid out of the termination of the case."  (ECF No. 325-5, RW Ex. 5, LK's Retainer Agreements, 5, 10.)  For these reasons, the Court concludes that RW's charging lien attaches to 45% of the one third settlement reserved for legal fees and LK is entitled to the remaining 55% of the legal fees.[8]

## IV.  Costs and Expenses

Both LK and RW are entitled to reimbursement for reasonable expenses incurred throughout the litigation.  LK

---

[8]    In the alternative, even if this Court considered RW's application for fees under a theory of quantum meruit, the Court would similarly conclude that RW was entitled to 45% of one third of the settlement allocated to legal fees.  A charging lien may be fixed at the "the fair and reasonable value of the services rendered, determined at the time of the discharge and computed on the basis of quantum meruit."  *Winkfield*, 2013 WL 371673, at *2.  "In assessing the amount of a charging lien on a quantum meruit basis, a court should consider: (1) the difficulty of the matter; (2) the nature and extent of the services rendered; (3) the time reasonably expended on those services; (4) the quality of performance by counsel; (5) the qualifications of counsel; (6) the amount at issue; and (7) the results obtained (to the extent known)."  *Id.* (internal quotation marks omitted).  For the reasons stated above, application of these factors would similarly result in awarding 55% to LK due to the disparity in hours devoted to the litigation and the fact that LK ultimately secured the settlement resolving the case.  Thus, even under a theory of quantum meruit, the Court would similarly conclude that RW's charging lien attached to 45% of the legal fees.

seeks $15,583.39 for its share of costs in the litigation. (LK Mem. at 8.)  RW seeks $3,607.56 in costs and expenses.  (Weiner Decl. ¶ 129.)

"[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998) (citation omitted).  Courts routinely reimburse the fee applicant for the cost of "photocopies, telephone calls, postage, court fees, facsimiles, transcripts, messenger services, process servers and outside vendor services." *Bobrow Palumbo Sales, Inc. v. Broan-Nuntone, LLC*, 549 F. Supp. 2d 274, 285 (E.D.N.Y. 2003) (citations omitted). Certain "overhead" costs, however, are not reimbursable.  *Id.* at 285-86.  Further, courts either disallow or reduce the amount for expenses that are vague or unsupported by documentation. *See Rotella v. Board of Educ. of City of New York*, No. 01-cv-0434 (NGG), 2002 WL 59106, at *5 (E.D.N.Y. Jan. 17, 2002) (reducing expense award by 50% due to vague entries and expenditures unsupported by receipts).

The Court finds that most of the costs that LK and RW seek are routinely recoverable, although a reduction of certain expenses is warranted.  LK provides two itemized lists of its expenses, which include generally reimbursable costs such as court filing fees, process server expenses, and expert fees, and

40

deposition fees.  (*See* LK Exs. 20-21.)  LK has not, however, submitted receipts for its photocopying fees ($4,788.32) and its receipts for the numerous postage expenses ($206.25) appear to be incomplete.  Accordingly, the Court applies a 50% reduction for these expenses, resulting in a total of $2,497.29 for photocopying and postage.  *See Rotella*, 2002 WL 59106, at *5 (reducing undocumented printing costs by 50%).  Likewise, the Court declines to credit LK's request for $20.75 in meals because no receipt was provided.  *See Artica v. J.B. Custom Masonry & Concrete, Inc.*, No. 09-cv-3796 (RER), 2012 WL 13102524, at *9 (E.D.N.Y. June 4, 2012) (declining to reimburse undocumented meal expenses).  LK is thus entitled to $13,065.35 in costs and expenses.

RW's request for costs is also generally fair and reasonable.  RW submits a list of expenses that are generally reimbursable such as travel and hotel costs, deposition services, expert fees, postage, and local transportation.  (*See* RW Exs. 35 (list of expenses); 40-41 (receipts, invoices, and other supporting documentation).)  The Court notes that LK's request for $774.30 in photocopying charges, although normally reimbursable expenses, is unsupported by documentation.  (*See* RW Ex. 41 at 22.)  Thus, the Court similarly reduces the requested photocopying charges by 50%.  Moreover, RW's claimed meal expenses of $194.71 and $30.96 in the summer of 2015, similarly

cannot be reimbursed here because they are unsupported by documentation.  Further, RW also concedes that the claimed subpoena fees should be reduced by $120.  (Weiner Reply Decl. ¶ 85.)  Accordingly, the Court finds that RW is entitled to $2,994.74 in costs and expenses.

### CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the parties' respective motions for attorneys' fees and costs, and concludes that RW is entitled to 45% of the one third of the settlement amount allocated to legal fees and $2,994.74 in costs, and LK is entitled to 55% of the one third of the settlement amount allocated to legal fees and $13,065.35 in costs.  The Court orders that these respective allocations of attorneys' fees, plus costs, are awarded to the two firms.  As noted in the Court's previous orders (*see* Docket Orders 5/22/2020, 5/21/2020), LK should confer with defendants and file a complete stipulation of dismissal within fourteen (14) days of this Order, once the settlement has been executed and the payments made.  The remaining motions are denied as moot.  (*See* No. 12-cv-1895, ECF No. 305; No. 15-cv-5760, ECF No. 182.)

The Court intends to file this decision on the public docket unless the parties informs the Court by March 12, 2021, of a legal and/or factual basis to withhold this decision from

the public.  *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) ("The common law right of public access to judicial documents is firmly rooted in our nation's history." (citation omitted)); *United States v. Storage Room Numbers*, No. 01-mj-1728(JS), 2021 WL 736423, at *2 (E.D.N.Y. Feb. 25, 2021)("A document is a 'judicial document' if the item is "relevant to the performance of the judicial function and useful in the judicial process." (citing *Lugosch*, 435 F.3d at 119)).

　　　　　SO ORDERED.

　　　　　　　　　　　　　　　　　　　 /s/
　　　　　　　　　　　　　　　　　 HON. KIYO A. MATSUMOTO
　　　　　　　　　　　　　　　　　 United States District Judge
　　　　　　　　　　　　　　　　　 Eastern District of New York

Dated:　　　March 5, 2021
　　　　　　 Brooklyn, New York